**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq.
609 W. South Orange Avenue, Suite 2P
South Orange, NJ 07079
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES CHRISTIAN, Individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>BT GROUP PLC, GAVIN PATTERSON, IAN LIVINGSTON, and TONY CHANMUGAM,<br><br>    Defendants. | Case No:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff James Christian, individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding BT Group plc ("BT" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.

Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants and their affiliates who purchased or otherwise acquired the publicly traded securities of BT between May 24, 2012 and January 20, 2017, both dates inclusive ("Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

3.     This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

4.     Venue is proper in this judicial district pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b) as a significant portion of Defendants' actions and the subsequent damages took place within this judicial district.

5.     In connection with the acts, conduct and other wrongs alleged herein, Defendants either directly or indirectly used the means and instrumentalities of interstate commerce, including but not limited to the United States mails, interstate telephone communications, and the facilities of the national securities exchange.

## PARTIES

6.     Plaintiff James Christian, as set forth in the attached PSLRA Certification, acquired BT securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

7.     Defendant BT provides communications services worldwide. BT is incorporated in England and Wales and headquartered at BT Centre 81 Newgate Street, London, EC1A 7AJ England. BT securities trade on the New York Stock Exchange ("NYSE") under the ticker symbol "BT."

8.     Defendant Gavin Patterson ("Patterson") has served as the Company's Chief Executive Officer ("CEO") since September 10, 2013 and a member of the Company's Board of Directors since June 2008.

9.     Defendant Ian Livingston ("Livingston") served as the Company's CEO and a member of the Company's Board of Directors from the beginning of the Class Period until his resignation on September 10, 2013.

10.    Defendant Tony Chanmugam ("Chanmugam") served as the Company's Group Finance Director throughout the Class Period.

11.    Collectively, Defendants Patterson, Livingston and Chanmugam are herein referred to as "Individual Defendants."

12.    Collectively, Defendant BT and Individual Defendants are herein referred to as "Defendants."

13.    Each of the Individual Defendants:

    a.     directly participated in the management of the Company;

    b.     was directly involved in the day-to-day operations of the Company at the highest levels;

c.      was privy to confidential proprietary information concerning the Company and its business and operations;

d.      was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

e.      was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

f.      was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

g.      approved or ratified these statements in violation of the federal securities laws.

14.      BT is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency as all of the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

15.      The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to BT under *respondeat superior* and agency principles.

**SUBSTANTIVE ALLEGATIONS**

**Defendants' False and Misleading Statements During the Class Period**

16.      On May 24, 2012, BT filed an annual report on Form 20-F with the SEC disclosing the Company's financial and operating results for the fiscal year ended March 31, 2012 (the "2012 20-F"). The 2012 20-F was signed by Defendant Chanmugam. The 2012 20-F contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Livingston and Chanmugam attesting to the accuracy of the financial statements, the

disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

17.     The Company's the Annual Report & Form 20-F 2012 (the "2012 Annual Report") was attached as Exhibit 15.2 to the 2012 20-F, which provided the following balance sheet:

## Summary group balance sheet

| At 31 March | 2012 £m | 2011 £m | 2010 £m | 2009 £m | 2008 £m |
|---|---|---|---|---|---|
| Intangible assets | 3,127 | 3,389 | 3,672 | 3,788 | 3,355 |
| Property, plant and equipment | 14,388 | 14,623 | 14,856 | 15,405 | 15,307 |
| Retirement benefit asset | – | – | – | – | 2,887 |
| Other non-current assets | 1,902 | 1,597 | 3,867 | 4,154 | 1,286 |
| | 19,417 | 19,609 | 22,395 | 23,347 | 22,835 |
| Current assets less current liabilities | (4,724) | (3,100) | (4,135) | (3,141) | (2,978) |
| Total assets less current liabilities | 14,693 | 16,509 | 18,260 | 20,206 | 19,857 |
| Non-current loans and other borrowings | (7,599) | (9,371) | (9,522) | (12,263) | (9,818) |
| Retirement benefit obligations | (2,448) | (1,830) | (7,864) | (3,973) | (108) |
| Other non-current liabilities | (3,338) | (3,357) | (3,500) | (3,699) | (4,499) |
| Total assets less liabilities | 1,308 | 1,951 | (2,626) | 169 | 5,432 |
| Called up share capital | 408 | 408 | 408 | 408 | 420 |
| Share premium account | 62 | 62 | 62 | 62 | 62 |
| Capital redemption reserve | 27 | 27 | 27 | 27 | 15 |
| Other reserves | 711 | 658 | 757 | 1,301 | (527) |
| Retained earnings (loss) | 89 | 770 | (3,904) | (1,656) | 5,439 |
| Total parent shareholders' equity (deficit) | 1,297 | 1,925 | (2,650) | 142 | 5,409 |
| Non-controlling interests | 11 | 26 | 24 | 27 | 23 |
| Total equity (deficit) | 1,308 | 1,951 | (2,626) | 169 | 5,432 |

18.     The 2012 Annual Report stated the following with regards to the Company's internal control over financial reporting:

**Internal control over financial reporting**
BT's management is responsible for establishing and maintaining adequate internal control over financial reporting for the group including the consolidation process. Internal control over financial reporting is designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external reporting purposes in accordance with IFRS. Management conducted an assessment of the effectiveness of internal control over financial reporting based on the framework for internal control evaluation contained in the Revised Guidance for Directors on the UK Governance Code published by the Financial Reporting Council (the Turnbull Guidance).

***Based on this assessment, management has concluded that at 31 March 2012, BT's internal control over financial reporting was effective.***

There were no changes in BT's internal control over financial reporting that occurred during 2012 that have materially affected, or are reasonably likely to have materially affected, the group's internal control over financial reporting. Any significant deficiency, as defined by the US Public Company Accounting Oversight Board (PCAOB), in internal control over financial reporting, is reported to the Audit & Risk Committee. PricewaterhouseCoopers LLP, which has audited the consolidated financial statements for 2012, has also audited the effectiveness of the group's internal control over financial reporting under Auditing Standard No.5 of the PCAOB. Their report is on page 97.

(Emphasis added).

19.     On May 23, 2013, BT filed an annual report on Form 20-F with the SEC disclosing the Company's financial and operating results for the fiscal year ended March 31, 2013 (the "2013 20-F"). The 2013 20-F was signed by Defendant Chanmugam. The 2013 20-F contained signed SOX certifications by Defendants Livingston and Chanmugam attesting to the accuracy of the financial statements, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

20.     The Company's the Annual Report & Form 20-F 2013 (the "2013 Annual Report") was attached as Exhibit 15.2 to the 2013 20-F, which provided the following balance sheet:

**Balance sheet**
**Summarised balance sheet**
Our balance sheet primarily reflects the significant investments in infrastructure that are the foundations of our business, and our capital management and funding strategy with which we underpin that investment.

| At 31 March | 2013 £m | 2012 £m | Movement £m |
|---|---|---|---|
| Property, plant & equipment, software and telecoms licences | 15,934 | 16,121 | (187) |
| Goodwill & other acquisition related intangible assets | 1,477 | 1,394 | 83 |
| Other non-current & current assets | 1,586 | 1,538 | 48 |
| Trade & other receivables | 3,061 | 3,476 | (415) |
| Investments, cash & cash equivalents | 1,455 | 844 | 611 |
| Loans & other borrowings | (10,013) | (10,486) | 473 |
| Trade & other payables | (5,521) | (5,962) | 441 |
| Other current & non-current liabilities | (1,859) | (1,787) | (72) |
| Provisions | (630) | (857) | 227 |
| Deferred tax liability | (1,209) | (1,100) | (109) |
| Pensions, net of deferred tax | (4,543) | (1,873) | (2,670) |
| **Total (deficit) equity** | **(262)** | **1,308** | **(1,570)** |

21.     The 2013 Annual Report stated the following with regards to the Company's

internal control over financial reporting:

**Internal control over financial reporting**
BT's management is responsible for establishing and maintaining adequate
internal control over financial reporting for the group including the consolidation
process. Internal control over financial reporting is designed to provide reasonable
assurance regarding the reliability of financial reporting and the preparation of
financial statements for external reporting purposes in accordance with IFRS.
Management conducted an assessment of the effectiveness of internal control over
financial reporting based on the framework for internal control evaluation
contained in the Revised Guidance for Directors on the UK Governance Code
published by the Financial Reporting Council (the Turnbull Guidance).

***Based on this assessment, management has concluded that at 31 March 2013,
BT's internal control over financial reporting was effective.***

There were no changes in BT's internal control over financial reporting that
occurred during 2012/13 that have materially affected, or are reasonably likely to
have materially affected, the group's internal control over financial reporting. Any
significant deficiency, as defined by the US Public Company Accounting
Oversight Board (PCAOB), in internal control over financial reporting, is reported
to the Audit & Risk Committee. PricewaterhouseCoopers LLP, which has audited
the consolidated financial statements for 2012/13, has also audited the
effectiveness of the group's internal control over financial reporting under
Auditing Standard No.5 of the PCAOB.

(Emphasis added).

22.     On May 22, 2014, BT filed an annual report on Form 20-F with the SEC disclosing the Company's financial and operating results for the fiscal year ended March 31, 2014 (the "2014 20-F"). The 2014 20-F was signed by Defendant Chanmugam. The 2014 20-F contained signed SOX certifications by Defendants Patterson and Chanmugam attesting to the accuracy of the financial statements, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

23.     The Company's the Annual Report & Form 20-F 2014 (the "2014 Annual Report") was attached as Exhibit 15.2 to the 2014 20-F, which provided the following balance sheet:

**Balance sheet**
**Summarised balance sheet**
Our balance sheet primarily reflects our significant investment in the network infrastructure assets that are the foundation of our business, and our capital management and funding strategy with which we finance that investment.

| At 31 March | 2014 £m | 2013 £m | Movement £m |
|---|---|---|---|
| Property, plant & equipment, software and telecoms licences | 15,525 | 15,934 | (409) |
| Goodwill & other acquisition related intangible assets | 1,402 | 1,477 | (75) |
| Other non-current & current assets | 1,000 | 1,586 | (586) |
| Trade & other receivables | 3,121 | 3,114 | 7 |
| Investments, cash & cash equivalents | 2,469 | 1,455 | 1,014 |
| **Total assets**[a] | **23,517** | **23,566** | **(49)** |
| Loans & other borrowings | (9,814) | (10,013) | 199 |
| Trade & other payables | (5,261) | (5,574) | 313 |
| Other current & non-current liabilities | (2,031) | (1,859) | (172) |
| Provisions | (533) | (630) | 97 |
| Deferred tax liability | (829) | (1,209) | 380 |
| Pensions, net of deferred tax | (5,641) | (4,543) | (1,098) |
| **Total liabilities** | **(24,109)** | **(23,828)** | **(281)** |
| **Total (deficit) equity** | **(592)** | **(262)** | **(330)** |

[a] Excluding deferred tax asset relating to the BT Pension Scheme.

24.     The 2014 Annual Report stated the following with regards to the Company's internal control over financial reporting:

**Internal control over financial reporting**
BT's management is responsible for establishing and maintaining adequate internal control over Financial reporting for the group. Internal{control over Financial reporting is designed to provide reasonable assurance regarding the reliability of Financial reporting and{the preparation of Financial statements for external reporting purposes in accordance with IFRS. Management conducted an assessment of the effectiveness of internal control over Financial reporting based on the framework for internal control evaluation contained in the Revised Guidance for Directors on the UK Governance Code published by the Financial Reporting Council (the Turnbull Guidance).

***Based on this assessment, management has concluded that at 31 March 2014, BT's internal control over financial reporting was effective.***

There were no changes in BT's internal control over financial reporting that occurred during 2013/14 that have materially affected, or are reasonably likely to have materially affected, the group's internal control over financial reporting. Any significant deficiency, as defined by the US Public Company Accounting Oversight Board (PCAOB), in internal control over financial reporting, is reported to the Audit & Risk Committee. PricewaterhouseCoopers LLP, which has audited

the consolidated financial statements for 2013/14, has also audited the effectiveness of the group's internal control over financial reporting under Auditing Standard No.5 of the PCAOB.

(Emphasis added).

25.     On May 21, 2015, BT filed an annual report on Form 20-F with the SEC disclosing the Company's financial and operating results for the fiscal year ended March 31, 2015 (the "2015 20-F"). The 2015 20-F was signed by Defendant Chanmugam. The 2015 20-F contained signed SOX certifications by Defendants Patterson and Chanmugam attesting to the accuracy of the financial statements, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

26.     The Company's the Annual Report & Form 20-F 2015 (the "2015 Annual Report") was attached as Exhibit 15.2 to the 2015 20-F, which provided the following balance sheet:

**Balance sheet**
**Summarised balance sheet**
Our balance sheet reflects our significant investment in the network infrastructure assets that are the foundation of our business, as well as the working capital with which we manage our business day by day. It also reflects the longer-term funding strategy with which we finance our investments, and our obligation to the pension fund.

| At 31 March | 2015 £m | 2014 £m | Movement £m |
|---|---|---|---|
| Property, plant & equipment, software and telecoms licences | 15,216 | 15,525 | (309) |
| Goodwill & other acquisition related intangible assets | 1,459 | 1,402 | 57 |
| Other non-current & current assets | 1,754 | 1,000 | 754 |
| Trade & other receivables | 3,324 | 3,121 | 203 |
| Investments, cash & cash equivalents | 3,957 | 2,469 | 1,488 |
| Total assets[a] | 25,710 | 23,517 | 2,193 |
| Loans & other borrowings | (9,768) | (9,814) | 46 |
| Trade & other payables | (5,276) | (5,261) | (15) |
| Other current & non-current liabilities | (2,244) | (2,031) | (213) |
| Provisions | (564) | (533) | (31) |
| Deferred tax liability | (948) | (829) | (119) |
| Pensions, net of deferred tax | (6,102) | (5,641) | (461) |
| Total liabilities | (24,902) | (24,109) | (793) |
| Total equity (deficit) | 808 | (592) | 1,400 |

[a] Excluding deferred tax asset relating to the BT Pension Scheme.

27.     The 2015 Annual Report stated the following with regards to the Company's internal control over financial reporting:

**Internal control over financial reporting**

BT's management is responsible for establishing and maintaining adequate internal control over financial reporting for the group. Internal control over financial reporting is designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external reporting purposes in accordance with IFRS. Management conducted an assessment of the effectiveness of internal control over financial reporting based on the framework for internal control evaluation contained in the Revised Guidance for Directors on the UK Governance Code published by the Financial Reporting Council (the Turnbull Guidance).

***Based on this assessment, management has concluded that at 31 March 2015, BT's internal control over financial reporting was effective.***

There were no changes in BT's internal control over financial reporting that occurred during 2014/15 that have materially affected, or are reasonably likely to have materially affected, the group's internal control over financial reporting. Any significant deficiency, as defined by the US Public Company Accounting Oversight Board (PCAOB), in internal control over financial reporting, is reported to the Audit & Risk Committee. PricewaterhouseCoopers LLP, which has audited the consolidated financial statements for 2014/15, has also audited the

effectiveness of the group's internal control over financial reporting under Auditing Standard No. 5 of the PCAOB.

(Emphasis added).

28.     On May 19, 2016, BT filed an annual report on Form 20-F with the SEC disclosing the Company's financial and operating results for the fiscal year ended March 31, 2016 (the "2016 20-F"). The 2012 20-F was signed by Defendant Chanmugam. The 2016 20-F contained signed SOX certifications by Defendants Patterson and Chanmugam attesting to the accuracy of the financial statements, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

29.     The Company's the Annual Report & Form 20-F 2016 (the "2016 Annual Report") was attached as Exhibit 15.2 to the 2016 20-F, which provided the following balance sheet:

**Balance sheet**

Our balance sheet this year includes the impact of acquiring EE. It also reflects our continued investment in the network infrastructure assets that are the foundation of our business, as well as the working capital with which we manage our business day by day.

On 29 January 2016 we purchased EE for a total consideration of £10,971m which included cash consideration of £3,464m and shares with a fair value of £7,507m. You can find more about how we have provisionally allocated the total consideration across the acquired assets and liabilities and the resulting goodwill in note 14 to the consolidated financial statements.

| Purchase consideration[a] | £m |
|---|---|
| Cash paid | 3,464 |
| Ordinary shares issued | 7,507 |
| **Total purchase consideration** | **10,971** |
| Net identifiable assets acquired[a] | 4,541 |
| Add: goodwill | 6,430 |
| **Net assets acquired** | **10,971** |

[a] Provisional fair values at 31 March 2016.

The impact of EE is reflected in the group's consolidated balance sheet at 31 March 2016, as we've explained below.

| At 31 March | 2016 £m | 2015 £m | Movement £m |
|---|---|---|---|
| Property, plant & equipment, software and telecommunications licences | 20,570 | 15,216 | 5,354 |
| Goodwill & other intangible assets | 10,876 | 1,459 | 9,417 |
| Other non-current & current assets | 2,288 | 1,754 | 534 |
| Trade & other receivables | 4,296 | 3,324 | 972 |
| Investments, cash & cash equivalents | 3,415 | 3,957 | (542) |
| Total assets[a] | 41,445 | 25,710 | 15,735 |
| Loans & other borrowings | (14,269) | (9,768) | (4,501) |
| Trade & other payables | (7,289) | (5,276) | (2,013) |
| Other current & non-current liabilities | (2,043) | (2,244) | 201 |
| Provisions | (723) | (564) | (159) |
| Deferred tax liability | (1,262) | (948) | (314) |
| Pensions, net of deferred tax | (5,235) | (6,102) | 867 |
| Total liabilities | (30,821) | (24,902) | (5,919) |
| Total equity | 10,624 | 808 | 9,816 |

[a] Excluding deferred tax asset relating to BT's defined benefit pension schemes.

30.     The 2012 Annual Report stated the following with regards to the Company's internal control over financial reporting:

**Internal control over financial reporting**
BT's management is responsible for establishing and maintaining adequate internal control over financial reporting for the group. Internal control over financial reporting is designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external reporting purposes in accordance with IFRS. Management conducted an assessment of the effectiveness of internal control over financial reporting based on the framework for internal control evaluation contained in the FRC Guidance on internal control (Turnbull), which is now reflected in the FRC Guidance on risk management, internal control and related financial and business reporting.

The scope of management's assessment of the effectiveness of our internal control over financial reporting included all relevant operations, except for the operation of the subsidiary EE Limited, which we acquired in January 2016. This exclusion is in accordance with the SEC's general guidance that an assessment of a recently acquired business may be omitted from our scope in the year of acquisition. EE Limited constituted 37% of total assets and 5% of the external

revenue of the consolidated financial statements of the group for the year ended 31 March 2016.

***Management has concluded that at 31 March 2016, BT's internal control over financial reporting was effective.***

There were no other changes in BT's internal control over financial reporting that occurred during 2015/16 that have materially affected, or are reasonably likely to have materially affected, the group's internal control over financial reporting. Any significant deficiency, as defined by the US Public Company Accounting Oversight Board (PCAOB), in internal control over financial reporting, is reported to the Audit & Risk Committee.

PricewaterhouseCoopers, which has audited the consolidated financial statements for 2015/16, has also audited the effectiveness of the group's internal control over financial reporting under Auditing Standard No. 5 of the PCAOB.

(Emphasis added).

31.     The statements referenced in ¶¶ 16 - 30 above were materially false and/or misleading because they misstated and failed to disclose the following adverse facts pertaining to the Company's business and operations which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company misstated its earnings due to improper accounting practices and improper sales, purchase, factoring and leasing transactions in its Italian operations; (2) the Company lacked effective internal controls; and (3) as a result, Defendants' statements about BT's business, operations and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## The Truth Begins To Emerge

32.     On October 27, 2016, the Company issued a press release announcing its results for the second quarter and half year to September 30, 2016, which revealed a write down of the value of items on the balance sheet by £145m due to certain historical accounting errors in its Italian operations, stating in part:

14

**Specific items**

Specific items resulted in a net charge after tax of £151m (Q2 2015/16: £52m charge). See Note 4 for a breakdown.

**BT Italia investigation**

*Following allegations of inappropriate management behaviour in our BT Italia operations, we have conducted an initial internal investigation. This included a review of accounting practices during which we have identified certain historical accounting errors and reassessed certain areas of management judgement.*

*We have written down the value of items on the balance sheet by £145m.* This is our current best estimate of the financial impact based on our internal investigation. The write down relates to balances that have built up over a number of years and our assessment is that the errors have not materially impacted the group's reported earnings over the previous two years. The amount has been charged as a specific item in our results for the quarter. As a non-cash item in the period it does not impact normalised free cash flow.

A full investigation of these matters is ongoing and we have appointed external advisers to assist with this. Appropriate action will be taken as the investigation progresses.

Our outlook is not affected.

(Emphasis added).

33.     On this news, shares of the Company fell $0.57 per share or over 2% from its previous closing price to close at $23.25 on October 27, 2016, damaging investors.

34.     On January 24, 2017, the Company issued a press release announcing an update on its investigation of its Italian operations, which revealed that the Company had grossly underestimated the severity of an accounting scandal at its Italian, stating in part:

**Update on investigation into BT's Italian business and on BT Group outlook**

**Update on investigation into BT's Italian business**

BT previously announced on 27 October 2016 that an initial internal investigation of accounting practices in its Italian business had identified certain historical accounting errors and areas of management judgement requiring reassessment. At that time, we announced the write down of items on the balance sheet by £145m, being the then best estimate of the financial impact of these issues.

15

Since then we have progressed the investigation, which has included an independent review by KPMG LLP of the accounting practices in our Italian operations and our own comprehensive balance sheet review. ***These investigations have revealed that the extent and complexity of inappropriate behaviour in the Italian business were far greater than previously identified and have revealed improper accounting practices and a complex set of improper sales, purchase, factoring and leasing transactions. These activities have resulted in the overstatement of earnings in our Italian business over a number of years.***

***The investigation into the financial position of our Italian business is now substantially complete. The adjustments identified have increased from the £145m announced in our half-year update to a total of around £530m.*** We are still evaluating what proportion of the total adjustments should be treated as prior year errors, and what proportion should be treated as the reassessment in the current year of management estimates. Work is also ongoing to establish how these adjustments should be reflected in BT Group's financial statements for the current and previous periods in light of applicable accounting requirements.

In addition, we would expect the matters described above to result in a reduction in our Q3 adjusted revenue and adjusted EBITDA of around £120m, and in a reduction in Q3 normalised free cash flow of around £100m. For 2016/17 as a whole, relative to our prior outlook, we would expect a decrease in adjusted revenue of around £200m, in adjusted EBITDA of around £175m, and of up to £500m of normalised free cash flow due to the EBITDA impact and the one-off unwind of the effects of inappropriate working capital transactions. For 2017/18, we would expect a similar annual impact to adjusted revenue and adjusted EBITDA as in 2016/17, with the EBITDA impact flowing through to normalised free cash flow. An updated outlook for the Group reflecting the above and other matters is set out below.

The EBITDA contribution of the Italian business included in the Group's reported EBITDA for the financial year ended 31 March 2016 was around 1%.

The improper behaviour in our Italian business is an extremely serious matter, and we have taken immediate steps to strengthen the financial processes and controls in that business. We suspended a number of BT Italy's senior management team who have now left the business. We have also appointed a new Chief Executive of BT Italy who will take charge on 1 February 2017. He will review the Italian management team and will work with BT Group Ethics and Compliance to improve the governance, compliance and financial safeguards in our Italian business.

Further, we are conducting a broader review of financial processes, systems and controls across the Group. The BT Group Remuneration Committee will consider the wider implications of the BT Italy investigation.

Gavin Patterson, Chief Executive BT Group plc, said:

"We are deeply disappointed with the improper practices which we have found in our Italian business. We have undertaken extensive investigations into that business and are committed to ensuring the highest standards across the whole of BT for the benefit of our customers, shareholders, employees and all other stakeholders."

(Emphasis added).

35.     On this news, shares of the Company fell $5.05 per share or over 20% from its previous closing price to close at $19.38 per share on January 24, 2017, further damaging investors.

36.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

37.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired BT securities publicly traded on the NYSE during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

38.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, BT securities were actively traded on NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained

only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by BT or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

39.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

40.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

41.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a.    whether the federal securities laws were violated by Defendants' acts as alleged herein;

b.    whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of the Company;

c.    whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

d.      whether the Individual Defendants caused the Company to issue false and misleading financial statements during the Class Period;

e.      whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

f.      whether the prices of BT securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

g.      whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

42.      A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them. There will be no difficulty in the management of this action as a class action.

43.      Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

a.      Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

b.      the omissions and misrepresentations were material;

c.      BT securities are traded in an efficient market;

d.      the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

e.      the Company traded on the NYSE and was covered by multiple analysts;

f.      the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

g.      Plaintiff and members of the Class purchased, acquired and/or sold BT securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

44.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

45.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## FIRST CAUSE OF ACTION

**Violation of Section 10(b) of The Exchange Act Against and Rule 10b-5
Promulgated Thereunder Against All Defendants**

46.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

47.     This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

48.     During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they

contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

49.     The Company and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

      a.     employed devices, schemes and artifices to defraud;

      b.     made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

      c.     engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of BT securities during the Class Period.

50.     The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

51.     Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material

statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

52.    As a result of the foregoing, the market price of BT securities was artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of BT securities during the Class Period in purchasing BT securities at prices that were artificially inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

53.    Had Plaintiff and the other members of the Class been aware that the market price of BT securities had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company's and the Individual Defendants did not disclose, they would not have purchased BT securities at the artificially inflated prices that they did, or at all.

54.    As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

55.    By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of BT securities during the Class Period.

## SECOND CAUSE OF ACTION

### Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

56.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

57.     During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

58.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

59.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Endologix securities.

60.     Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and

exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

61.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

a.     Determining that this action is a proper class action, designating Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Class Counsel;

b.     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

c.     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

d.     Awarding such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.


Dated: January 25, 2017                    Respectfully submitted,

                                           **THE ROSEN LAW FIRM, P.A.**

                                           By:/s/ Laurence M. Rosen
                                           Laurence M. Rosen, Esq.

609 W. South Orange Avenue, Suite 2P
South Orange, NJ 07079
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*